**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | |
|---|---|
| SHIRLEY LLOYD and VICTORIA MILLER, on behalf of themselves and all others similarly situated, | Civil Action No.: 1:19-cv-351-HSO-JCG |
| Plaintiffs, | |
| v. | **PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| KEESLER FEDERAL CREDIT UNION, | |
| Defendant. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## I.    **INTRODUCTION**

Plaintiffs Shirley Lloyd and Victoria Miller ("Plaintiffs") and their Counsel achieved extraordinary results for the Settlement Class[1]: Defendant Keesler Federal Credit Union ("KFCU" or "Defendant") has agreed to make available **$3,000,000.00 in cash** to all Account holders who were charged an APPSN Fee or a Futile ODT Fee during the Class Period. Plaintiffs now respectfully request that the Court grant Preliminary Approval of the Settlement Agreement, attached hereto as ***Exhibit 1***, which will resolve all claims against KFCU in the above-entitled Action.

The Court should grant Preliminary Approval because the terms of the proposed Settlement are fair, adequate, and reasonable under the law, and provide substantial relief for the Settlement Class. Indeed, given the risks inherent in this Action, the $3,000,000.00 Settlement Fund, which includes (i) cash payments or Account credits provided to Class Members; (ii) Class Counsel's fees and costs as approved by the Court; (iii) Service Award payments to the Class Representatives as approved by the Court; and (iv) costs of notice and administration, is an outstanding result for Class Members. Moreover, where the Settlement provides for a guaranteed, direct, and immediate award for Class Members, this benefit far outweighs the substantial risks and uncertainties of continued litigation and expense. Indeed, for those Class Members who are Past Account Holders, the Settlement Administrator will directly distribute to Class Members their pro rata share of the Net Settlement Fund by check, and for those Class Members who are Current Account Holders, KFCU will distribute their pro rata share of the Net Settlement Fund by directly crediting their Accounts. There are no claim forms and Class Members will not be required to submit proof that they were harmed by KFCU's overdraft fee practices. Instead, the Parties have retained an expert and will use KFCU's available data to determine which Account holders were harmed by the assessment of APPSN Fees and Futile ODT Fees and in what amounts, and will distribute the Settlement Fund pro rata. Thus, the plan of allocation fairly and adequately accounts for the value of each Class Member's individual claim.

In sum, the Settlement readily satisfies all criteria required for settlement approval in the Fifth Circuit and under the Federal Rules of Civil Procedure.

---

[1]    All capitalized terms used throughout this memorandum have the same meanings as those found in the Settlement Agreement.

## II.    <u>BACKGROUND</u>

### A.    Procedural History

On June 28, 2019, Plaintiff Shirley Lloyd filed her putative class action complaint in this Court, seeking damages, restitution, and declaratory relief arising from KFCU's alleged breach of its account contracts by improperly assessing and collecting of overdraft fees on debit card transactions that were authorized into a positive balance and settled into a negative balance ("APPSN Fees"). Dkt. No. 1; Joint Decl., ¶ 6. KFCU filed its Answer to the complaint on September 4, 2019. Dkt. No. 6; Joint Decl., ¶ 7.

The Parties then commenced a contentious exchange of discovery for over a year. Joint Decl., ¶ 8. On September 17, 2019, Plaintiff Lloyd served her first set of interrogatories and requests for production of documents on Defendant. Dkt. Nos. 12, 13; Joint Decl., ¶ 9. On November 7, 2019, Defendant served responses and objections to the same. Joint Decl., ¶ 10. On March 26, 2020, Plaintiff Lloyd served her responses to Defendant's first set of interrogatories and requests for production. Dkt. Nos. 19, 20; Joint Decl., ¶ 11. On April 1, 2020, Plaintiff Lloyd also served her Notice to Take Deposition of KFCU. Dkt. No. 21; Joint Decl., ¶ 12.

The parties met and conferred over several months until Plaintiff ultimately filed her Motion to Compel Discovery Responses on June 24, 2020. Dkt. No. 23; Joint Decl., ¶ 13. That Motion was held in abeyance on July 16, 2020 after the Court granted the Parties' Motion for Extension of Time to Complete Discovery. Dkt. No. 29; Joint Decl., ¶ 14. The Parties thereafter received additional extensions of time to complete discovery from the Court, due to numerous delays in obtaining the requisite data and documents needed to complete discovery. *See* Dkt. Nos. 32, 34, 35; Joint Decl., ¶ 15. Ultimately, Plaintiffs reviewed thousands of pages of documents

during the course of this case, as well as voluminous accountholder transactional data, which was reviewed and analyzed with the help of Plaintiff's expert. *See* Joint Decl., ¶ 16.

On January 20, 2021, the Parties agreed to mediate and jointly filed a Motion to Stay All Deadlines pending the mediation, which the Court granted. Dkt. Nos. 36, 37; Joint Decl., ¶ 17. On May 17, 2021, the Parties conducted mediation before well-respected neutral Robert Gibbs, which did not result in settlement. Joint Decl., ¶ 18.

After this time, the Parties returned to engaging in the discovery process for several additional months. *Id.* ¶ 19. Plaintiff Lloyd again served a Notice to take the Deposition of KFCU on July 12, 2021, (Dkt. No. 38). Dkt. No. 40; Joint Decl., ¶ 20. KFCU also noticed and took the deposition of Plaintiff Lloyd. Joint Decl., ¶ 21. Subsequently, on October 11, 2021, the Parties jointly requested a stay of the Action in order to facilitate ongoing settlement negotiations, which the Court granted. Dkt. No. 48; Joint Decl., ¶ 22.

In the interim of the Parties' settlement discussions, on October 20, 2021, Plaintiff Victoria Miller filed her putative class action complaint in this Court, (Civil Action No. 1:12-cv-326-TBM-RPM), alleging that Defendant breached its account contracts and was unjustly enriched by improperly charging futile and unnecessary overdraft transfer fees ("Futile ODT Fees"). Joint Decl., ¶ 23. Plaintiff Miller then amended her complaint to add additional claims relating to the improper charging of overdraft fees on APPSN Transactions—the same claims alleged by Plaintiff Lloyd. *Id.* ¶ 24.

The Parties returned to mediation with Robert Gibbs on September 28, 2021. *Id.* ¶ 25. This second mediation did not result in a settlement, either. *Id.* Only in subsequent discussions following the second mediation were the Parties able to reach an agreement. *Id.* The settlement

was reached after the close of fact discovery, on the eve of Plaintiff Lloyd submitting her motion for class certification. *Id.*

On November 4, 2021, Plaintiff Lloyd filed a Notice of Settlement, informing the Court that Plaintiff and KFCU had agreed to settle the litigation on a classwide basis. Dkt. No. 47; Joint Decl., ¶ 26.

On November 10, 2021, Plaintiff Lloyd filed an Unopposed Motion to Consolidate her action with that filed by Ms. Miller, which the Court granted on November 15, 2021. Dkt. No. 51; Joint Decl., ¶ 27.

Shortly thereafter, the Parties finalized and executed the Settlement Agreement that is currently at issue in this Motion. *See **Exhibit 1*** attached hereto. Joint Decl., ¶ 28.

### B.    Class Counsel's Investigation

Prior to negotiating the Settlement, Class Counsel engaged in an extensive, independent investigation regarding the viability of Plaintiffs' claims, which resulted in the successful Settlement reached by the Parties. Joint Decl., ¶ 29. Class Counsel spent many hours investigating the claims of several potential plaintiffs against KFCU, including interviewing a number of KFCU customers to gather information about KFCU's conduct and its impact upon consumers, which was essential to Class Counsel's ability to understand the nature of Defendant's conduct, the language of the account agreement and other documents at issue, and potential remedies. *Id.* ¶ 30.

Through its independent investigation, Class Counsel expended significant resources researching and developing the legal claims at issue. *Id.* ¶ 31. Indeed, Class Counsel is familiar with the instant claims through their extensive history of litigating and resolving other banking fee claims with similar factual and legal issues to the case at bar. *Id.* Class Counsel has experience in understanding the damages at issue, what information is critical in determining class membership,

and what data is necessary to calculate each Class Member's respective damages. *Id.* These issues were heavily contested all throughout the Parties' written discovery process and ongoing meet and confer efforts. *Id.* Class Counsel, along with their expert, spent a significant amount of time analyzing data regarding KFCU's fee revenue related to the assessment of OD fees. *Id.* Defendant similarly retained its own expert who conducted a review and analyzed data accordingly. *Id.* This data and analysis evaluating potential damages at issue was used in preparation for the Parties' scheduled meditations and to further drive the viability of resolution. *Id.*

Class Counsel mediated with Mediator Robert Gibbs twice, fully equipped with the facts and law to support the merits of Class Members' claims and negotiated the proposed Settlement while zealously advancing the position of Plaintiffs and the Class Members. *Id.* ¶ 32. At all times, Class Counsel was fully prepared to continue litigation rather than to accept a settlement that was not in the best interests of Plaintiffs and the Settlement Class. *Id.* ¶ 33. Although the case did not settle at the conclusion of the first or second mediation session, the Parties continued to actively participate in the settlement discussions in order to reach an acceptable compromise after the final mediation session. *Id.* ¶ 34.

In sum, it is evident that Class Counsel spent significant time conferring with Plaintiffs, investigating facts, researching the law, preparing a well-pleaded complaint, engaging in discovery and ongoing meet and confer efforts, working with an expert witness, taking several depositions, and reviewing important documents and data. Class Counsel's extensive efforts resulted in the proposed Settlement for which Preliminary Approval is respectfully requested.

### C.  Summary of the Settlement Terms

#### 1.  <u>The Settlement Class</u>

The Settlement Class is a Federal Rule of Civil Procedure 23(b)(3) opt-out class, defined as "all individuals who, while members of Defendant, have been charged an APPSN Fee or a Futile ODT Fee during the Class Period." Agreement at ¶ 27. "APPSN Fees" are those overdraft fees assessed on debit card transactions that were authorized by Defendant into a positive balance and settled into a negative balance. *Id.* at ¶ 1. "Futile ODT Fees" are those overdraft fees assessed by Defendant on unnecessary overdraft transfers. *Id.* at ¶ 2. "Class Period" is defined as June 28, 2016 to December 1, 2021. *Id.* at ¶ 11. Excluded from the Settlement Class are Defendant's current and former officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, assigns, and any judges who have presided over the Action and their immediate families and judicial staff. *Id.* at ¶ 27.

### 2. Relief for The Benefit of The Settlement Class

#### a. Settlement Fund

Within fourteen (14) days after the entry of the Preliminary Approval Order, Defendant has agreed to place $3,000,000.00 cash into a Settlement Fund to be held by the Settlement Administrator in an Escrow Account. Agreement ¶ 28. This total cash amount will be used to pay: (a) Class Members their respective payments; (b) any Court-awarded reasonable attorneys' fees and costs for Class Counsel; (c) any Court-awarded Service Awards for Plaintiffs for their role as Class Representatives; and (d) costs of notice and administration, which includes, but is not limited to the costs and expenses of Defendant's consulting experts in compiling the Class List, the sending of Class Notice, updating the Class List, and the transmission of settlement checks or credits, other than to the extent credits are provided by Defendant. *Id.* at ¶ 22.

Importantly, Class Members need not affirmatively do anything—via submitting a claim, or otherwise—in order to receive relief under the Settlement. Rather, the Settlement Administrator

will issue checks to all former Account holders, and KFCU will direct deposit payments into the accounts of current Accountholders. *Id.* at ¶¶ 46-47.

### b.    Allocation of the Class Member Payments

Of the $3,000,000.00 cash paid into the Settlement Fund, after the deduction of attorneys' fees and costs, Service Awards to Plaintiffs, and costs of administration and Notice, Class Members' distributions will be made from the Net Settlement Fund on a pro rata basis based on the amount of relevant fees paid by the Class Member. Payments to the Class Members shall be calculated as follows:

*Class Member's Pro Rata %*

$$= \frac{\textit{APPSN Fees and Futile ODT Fees Paid by That Class Member}}{\textit{Total of APPSN Fees and Futile ODT Fees Paid by All Class Members}}$$

*Class Member's Distribution = Class Member's Pro Rata % x Net Settlement Fund*

*Id.* at ¶ 44.

### c.    Direct Distribution of Settlement Class Member Payments

Within sixty (60) days after entry of the Preliminary Approval Order, Defendant will provide the necessary data to the Settlement Administrator that is sufficient to determine each Class Member's respective payment allocation based on the amount of fees each Class Member paid Defendant. *Id.* at ¶ 45.

Class Members will receive their respective settlement benefits from the Net Settlement Fund based on the allocation determined by the Settlement Administrator, with the assistance of an expert retained by the Parties to assist in the calculations. *Id.* at ¶¶ 47-48. Class Members who are Current Account Holders will receive a credit to their Accounts. *Id.* at ¶ 48. If any funds transferred from the Escrow Account to Defendant are not successfully delivered to a Current Account Holder, those funds shall be returned by Defendant to the Settlement Administrator for

deposit into the Escrow Account. *Id.* at ¶ 48. Class Members who are Past Account Holders will receive payment by check with an appropriate legend in a form approved by Class Counsel and Defendant's Counsel. *Id.* at ¶ 48. Checks will be issued by mail from the Settlement Administrator to the Class Member addresses it has identified as valid. *Id.* at ¶ 48. The Settlement Administrator will make reasonable efforts to locate the proper address for any Class Member whose check is returned by the Postal Service as undeliverable and will re-mail it once to the updated address. *Id.* at ¶ 48. Checks will be valid for one hundred twenty (120) days. *Id.* at ¶ 48.

### d.    Disposition of Unclaimed Funds

Any remaining funds in the Escrow Account (after payment of all approved Class Member claims, Class Counsel's attorneys' fees and expenses, costs of notice and administration, and Service Awards) resulting from uncashed checks within 120 days after distribution to Class Members, will be subject to a second distribution to Class Members who claimed in the initial distribution if the average check amount would equal or exceed $5.00 after deducting the costs of a second distribution. *Id.* at ¶ 49. Any second distribution will be made in the same manner as the first distribution. *Id.* at ¶ 49. After the second distribution, or if no second distribution is required, any remaining unclaimed settlement funds will be distributed to two *cy pres* recipients—one nominated by Class Counsel and the other nominated by Defendant, at the agreement of both Parties, their attorneys, and approval of the Court. *Id.* at ¶ 49.

### 3.    Releases

The Releases are narrowly tailored. In exchange for the benefits conferred by the Settlement, Class Members will be deemed to have released KFCU from the claims relating to the subject matter of the Action. *Id.* at ¶ 50.

Both Plaintiffs will close their accounts at KFCU, in good standing, and will withdraw as members of KFCU within 60 days after the Effective Date. *Id.* at ¶ 53. Subject to this compliance, Defendant will release all claims of any kind or nature that could have been asserted against Class Representatives, Class Members, or Class Counsel relating to the Complaint. *Id.* at ¶ 52.

### 4.    The Notice Process

KCC, the proposed Settlement Administrator subject to the Court's ultimate approval, is one of the leading class action settlement administrators in the United States. The Settlement Administrator will oversee Notice, which is designed to provide the best notice practicable and is tailored to take advantage of the information KFCU has available about the Settlement Class. No later than sixty (60) days after the Execution Date, Defendant must provide the Settlement Administrator with the Class List, which will contain the Class Member's email address and/or mailing address last provided to Defendant. *Id.* at ¶ 34. Within thirty (30) days of receiving the Class List, the Settlement Administrator shall implement the Notice to all members of the Settlement Class. *Id.* at ¶ 35. The Notice consists of 2 forms of notice: email and mail. *Id.* at ¶ 33; *see also* ***Exhibit B attached to the Agreement.*** Overall, each form of Notice will clearly and accurately set forth: (a) a description of the material terms of the Settlement; (b) a date by which Class Members may exclude themselves or "opt-out" of the Settlement Class; (c) a date by which Class Members may object to the Settlement; (d) the date upon which the Final Approval Hearing is scheduled to occur; (e) and the Settlement Website address at which Class Members may access the Settlement Agreement and other related documents and information. *See id.* The Notice constitutes sufficient notice to all persons entitled to such notice and satisfies all applicable requirements under the law, including Federal Rule of Civil Procedure 23 and constitutional due process.

For Class Members who have previously provided their email address to KFCU and agreed to receive communications via this method, will receive email notice. *Id.* at ¶ 33. Alternatively, Class Members who have not previously provided their email address to KFCU will receive notice via mail. *Id.* For those Class Members who receive Notice via mail, the Settlement Administrator will use the addresses provided on the Class List, as updated through the United States Postal Service's National Change of Address database. *Id.* at ¶ 35. If such mailed notice is returned as undeliverable with a forwarding address, then the Settlement Administrator will forward the Notice to the listed forwarding address. *Id.* at ¶ 35. If the mailed notice is returned undeliverable without a forwarding address, the Settlement Administrator will attempt to locate the correct address through a reasonable search and must forward the Notice to the address obtained from the search. *Id.* at ¶ 35.

### 5.    Right to Withdrawal

Either Party may withdrawal from the terms of the Settlement if 5% or more of the Class Members opt out. *Id.* at ¶ 39. The Party wishing to exercise this right must send written notice to the other Party within fourteen (14) days after the Exclusion Deadline. *Id.* Should either Party withdrawal from the Agreement, or if the Settlement is not approved by the Court, the Settlement Agreement shall be considered null and void. *Id.* at ¶ 40.

### 6.    Class Representative Service Awards

In conjunction with moving for Final Approval, Class Counsel will seek a Service Award of $10,000 for Plaintiff Shirley Lloyd and up to $2,500 for Plaintiff Victoria Miller for their roles in the case as Class Representative. Agreement at ¶ 56. The Service Awards will be paid from the Settlement Fund within ten (10) days after the Effective Date, *id.,* and will be in addition to the Class Member payments that Plaintiffs will be entitled to receive under the Settlement. This award will compensate Plaintiffs for their time and effort and for the risks they assumed in prosecuting the Action and serving as Class Representatives. Plaintiff Lloyd provided assistance that enabled

Class Counsel to successfully prosecute the Action and reach the Settlement, including: (1) submitting to interviews with Class Counsel; (2) locating and forwarding documents and information to Class Counsel to assist with the discovery process; (3) participating in conferences with Class Counsel; (4) preparing for and sitting for a deposition; (5) responding to written discovery; and (6) reviewing settlement documentation. Joint Decl. ¶ 35. Plaintiff Miller also submitted to interviews with Class Counsel, forwarded documents and information to Class Counsel, and reviewed settlement documentation. Joint Decl. ¶ 36. In doing so, Plaintiffs were integral to the case and Defendant does not object to Class Counsel's request for the Service Awards. Joint Decl. ¶ 37.

### 7.    Attorneys' Fees and Costs

Class Counsel will also request attorneys' fees and costs at Final Approval in order to be fairly compensated for their extensive efforts made in the litigation. Pursuant to the Agreement, Class Counsel is entitled to request, and KFCU will not oppose, attorneys' fees of up to 33.33% of the Settlement Fund, as well as reimbursement of reasonable litigation expenses incurred in connection with the Action. Agreement at ¶ 55. The Parties negotiated and reached an agreement regarding fees, costs, and expenses only after the Parties agreed to the material terms of the Settlement. Joint Decl. ¶ 38. Such an award is subject to this Court's final approval and will serve to compensate for the time, risk, and expense Plaintiffs' Counsel incurred in pursuing claims for the benefit of the Settlement Class.

### III.    ARGUMENT

#### A.    Legal Standard for Preliminary Approval

Courts have discretion to approve a class action settlement under Federal Rule of Civil Procedure 23(e) when the settlement is "fair, adequate, and reasonable." *Ayers v. Thompson,* 358 F.3d 356, 368 (5th Cir. 2004). The Fifth Circuit has emphasized "the strong judicial policy favoring settlements." *In re Chicken Antitrust Litig. Am. Poultry,* 669 F.2d 228, 238 (5th Cir. 1982); *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1105 (5th Cir. 1977) ("Settlement agreements

are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits."). Such is the case particularly in the context of class action lawsuits. *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977) (acknowledging "there is an overriding public interest in favor of settlement" in class action suits). Accordingly, in assessing the proposed settlement at the preliminary approval stage, the court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face to preclude judicial approval.'" *Jenkins v. Trustmark Nat. Bank,* 300 F.R.D. 291, 301 (S.D. Miss. 2014) (citing *McNary v. Am. Sav. And Loan Ass'n,* 76 F.R.D. 644, 649 (D.C. Tex. 1977).)

At bottom, deciding whether to preliminarily approve the settlement requires the Court to assess whether the settlement is "fair, adequate, and reasonable" under Fed. R. Civ. P. 23(e). The Fifth Circuit had identified the following six (6) factors for a trial court to consider and evaluate in approving a proposed class settlement (the "*Reed* factors"):

> (1) the existence of fraud or collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of plaintiffs' success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.,* 703 F.2d 170, 172 (5th Cir. 1983) (citing *Parker v. Anderson,* 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Jones v. Singing River Health Services Foundation,* 865 F.3d 285, 293 (5th Cir. 2017).

### B.    The Settlement Satisfies the Criteria for Preliminary Approval

Each of the six relevant *Reed* factors weigh in favor of Preliminary Approval. First, the Settlement was reached in the absence of fraud or collusion, and is the product of good-faith,

- 12 -

informed, and several arm's-length negotiations by competent and experienced counsel. Joint Decl. ¶ 39. In weighing the merits of Plaintiffs' claims and the defenses asserted against the attendant risks of continued litigation and delay, Plaintiffs are confident that the Settlement achieves a fair and adequate resolution for both Parties. Joint Decl. ¶ 40. Plaintiffs believe that the claims are meritorious and would prevail if this matter proceeded to trial. Alternatively, KFCU believes that Plaintiffs' claims are unfounded, denies any potential liability, as well as Plaintiffs' ability to certify a class, and has consistently indicated a willingness to litigate those claims vigorously.

Ultimately, Plaintiffs' Counsel believe that, on balance, the benefits of the Settlement outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with contested class certification proceedings and possible interlocutory appellate reviewing, completing merits discovery, pretrial motion practice, trial, and finally appellate review. Joint Decl. ¶ 41.

### 1.    There Was No Fraud or Collusion Behind the Settlement

The first factor asks whether fraud or collusion exists behind the settlement. There is no suggestion of fraud or collusion where "[t]he proposed class settlement was the product of rigorous, hard-fought negotiations conducted at arm's-length." *O'Donnell v. Harris Cty., Texas,* No. CV H-16-1414, 2019 WL 4224040, at *9 (S.D. Tex. Sept. 5, 2019). A court may properly "presume that no fraud or collusion occurred between counsel in the absence of any evidence to the contrary." *Hill v. Hill Bros. Constr. Co., Inc.,* No. 3:14-CV-213, 2018 WL 280536, at *2 (N.D. Miss. Jan. 3, 2018) (citations omitted).

The Settlement reached in this case is the result of intensive, arm's length negotiations between experienced attorneys who are familiar with the legal and factual issues of this Action,

combined with the assistance of a highly respected mediator whose involvement in two separate mediations helped guide the Parties' arm's length negotiations without undue pressure or collusion. Joint Decl. ¶ 42.  Furthermore, Class Counsel is particularly experienced in litigation, certification, trial, and settlement of nationwide consumer class action cases. *Id.* ¶ 43.  As detailed above, Class Counsel thoroughly investigated and analyzed Plaintiffs' claims and vigorously litigated the Action through the contentious discovery process and various meet and confer conferences with Defendant's Counsel, in retaining an expert to analyze damages, in reviewing thousands of pages of documents, in taking two 30(b)(6) depositions, in briefing motions to compel discovery responses, and in evaluating the strengths and weaknesses of the claims and defenses in order to formulate an appropriate foundation upon which to negotiate and settle Plaintiffs' claims at mediation. *Id.* ¶ 44.  Thus, the process leading upon to the Settlement was procedurally fair.

**2.    The Complexity, Expense, and Likely Duration of the Litigation Favors Preliminary Approval**

The proposed Settlement provides Class Members with a substantial, guaranteed, and immediate recovery that would typically take several years of continued litigation and significant expenses to achieve. "The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Jenkins,* 300 F.R.D. at 303 (citations and internal quotations omitted).

Recovery by any means other than settlement would require additional years of litigation here and in the Fifth Circuit, and this delay would inevitably force the Settlement Class to wait longer for recovery and would ultimately reduce the value of recovery overall. At a minimum, Class Counsel would anticipate many months of motion practice as the Parties briefed class

certification and summary judgment leading up to trial. Joint Decl. ¶ 45.  The anticipated costs associated with litigation tasks of this nature weigh in favor of finding the Settlement is presumptively fair. For instance, although Class Counsel believes that Plaintiffs' claims have substantial merit, the fact remains that, to Class Counsel's knowledge, no similar APPSN Fee claim has proceeded to trial. *Id.* ¶ 46.  This means that there is no model for Plaintiffs' case and therefore, unforeseen pitfalls could easily derail the Class's claims should they proceed through the rigors of litigation. *Id.* ¶ 47.  Moreover, because KFCU answered the Complaint, the Court in this case did not have the benefit of ruling on a Motion to Dismiss. Certainly, the strength of Plaintiffs' claims is not without substantial risks inherent in proceeding with the litigation of these novel legal issues. In fact, it is reasonable to infer that in the absence of settlement, resolution would have taken many months if not years, given the motion practice still remaining.

Although Plaintiffs are confident that the Action is with merit and that the Class should ultimately prevail, the aforementioned risks of extended litigation and its given uncertainties, such as failing to achieve class certification before trial on the merits is very much palpable. *See Ayers,* 358 F.3d at 369 ("settling now avoids the risks and burdens of potentially protracted litigation."). Thus, it is clear that the proposed Settlement is the best vehicle for Class Members to receive the relief to which they believe they are entitled in the most prompt and efficient manner available.

3. **The Stage of the Proceedings and the Amount of Discovery Completed Favors Preliminary Approval**

In assessing this factor, the court considers "the degree of case development that class counsel have accomplished prior to settlement to ensure that counsel had an adequate appreciation of the merits of the case before negotiating." *Kemp v. Tower Loan of Mississippi, LLC,* 2017 WL 6522323, *6 (S.D. Miss. Dec. 20, 2017) (quoting *Moore v. Halliburton Co.,* 2004 WL 2092019, *7 (N.D. Tex. Sept. 9, 2004).)

- 15 -

As illustrated above, the Parties have engaged in an extensive and contentious discovery process and have devoted a significant amount of time and resources to investigating, litigating, and resolving this case over the course of two and a half years. Indeed, at the time of settlement, fact discovery had closed. Due to Class Counsel's years of experience in litigating cases like this one, they were able to settle Plaintiffs' Action, well aware of the attendant strengths and weaknesses of their claims, and to evaluate the likelihood of success at class certification and trial, the risks of continued litigation, and the benefits of settlement. *See* Joint Decl. ¶ 48. The substantial amount of discovery conducted by the Parties to date enabled Class Counsel to adequately assess KFCU's potential damages exposure, as well as to provide its expert sufficient data to analyze a viable classwide damages calculation. This information allowed the Parties to estimate that the Settlement Class's most likely recoverable damages at trial would have been approximately $7,000,000. *Id.* ¶ 49. Therefore, the benefits provided through the Settlement will afford a recovery to the Class of approximately 43% of the most probable damages without further risks attendant to litigation. *Id.* ¶ 50. Accordingly, the amount of information exchanged has been sufficient to inform the Parties' negotiations and to allow them to evaluate, with confidence, the strengths and deficiencies of Plaintiffs' claims, and to craft a fair settlement structure for the Class.

### 4.   **The Probability of Plaintiff's Success on the Merits Favors Preliminary Approval**

The fourth factor requires the Court to consider the likelihood of success on the merits had the case proceeded through litigation. *Ayers,* 358 F.3d at 370. The Court must "compare [the settlement] terms with the likely rewards the class would have received following a successful trial of the case." *Reed,* 703 F.2d at 172. In making this evaluation, the court must not "decide the issues or try the case to assess this factor, because, the very purpose of the compromise is to avoid the

delay and expense of such a trial." *Purdie v. Ace Cash Express, Inc.,* 2003 WL 22976611 at *6 (N.D. Tex. Dec. 11, 2003).

Several decisions throughout the country involving claims challenging identical bank overdraft fee practices such as Defendant's alleged in this case demonstrate the strength of Plaintiffs' claims. For example, as to Plaintiffs' APPSN Fee claim, courts have found financial institutions that assess overdraft fees on APPSN transactions in the manner that KFCU did here defies consumers' reasonable understanding of how account balances are reduced according to the institutions' selected contract language. *See e.g., Richard v. Glens Falls National Bank,* No. 1:20-cv-00734 (BKS/DJS), 2021 WL 810218, at *9 (N.D.N.Y. Mar. 3, 2021) (denying motion to dismiss breach of contract claim on the basis that the contract language "is at least ambiguous as to whether it permits Defendant to use a measure other than the account's actual balance before assessing an Overdraft [] Fee"); *Townsley v. Atlantic Union Bank,* No. 3:19-cv-849, 2020 WL 4890058 (E.D. Va. Aug. 20, 2020) (same); *Kelly v. Community Bank, N.A.,* No. 8:19-cv-919 (MAD/CFH), 2020 WL 777463, at *6 (N.D.N.Y. Feb. 18, 2020)*; Lussoro v. Ocean Financial Federal Credit Union,* 456 F. Supp. 3d 474, 483 (E.D.N.Y. Apr. 22, 2020). However, other courts have reached the opposite conclusion. *See, e.g., Boone v. MB Fin. Bank, N.A.,* 375 F. Supp. 3d 987, 993 (N.D. Ill. 2019). Because this Court did not have an opportunity to evaluate a Motion to Dismiss, the Parties did not have the benefit of this Court's analysis of the relevant contract language, and Plaintiffs faced a significant risk that they would lose at summary judgment.

Moreover, this case also faced the risk of losing at class certification, losing at trial, losing on appeal at either class certification or after a successful trial. Any one of these risks would have been devastating to the potential recovery, and even if the case had survived to a final collected judgment, that would only be obtained after years of delay and increased costs of litigation that

would reduce the benefit obtained. Plainly, there was no guarantee at any juncture that Plaintiffs would ultimately prevail in the Action.

Thus, the strength of Plaintiffs' claims weighed against the guaranteed and immediate monetary benefit also lends to a finding that the Settlement is fair, adequate, and reasonable to support Preliminary Approval.

### 5.    The Range of Possible Recovery Favors Preliminary Approval

The Settlement provides significant relief to Class Members. Specifically, Class Counsel believes that the Settlement represents approximately 43% of the total actual recoverable damages in the case. *See* Joint Decl. ¶ 51. Class Members will receive a settlement benefit in the form of a credit to their Accounts or a cash settlement check in amounts based on what they paid KFCU in APPSN and/or Futile ODT Fees. This guaranteed benefit constitutes an exceptional recovery and is within the accepted range of other approved settlements in similar bank fee cases. *See e.g., Thompson v. Community Bank, N.A.,* No. 8:19-CV-919 (MAD/CFH), 2021 WL 4084148 at *8 (N.D.N.Y. Sept. 8, 2021) (finding settlement that represented 39% of defendant's potential damages exposure based on the value of the settlement "represents a substantial recovery for Settlement Class Members, particularly in light of the risks of litigation"); *Roberts v. Capital One, N.A.*, No. 1:16-cv-04841-LGS (S.D.N.Y. Dec. 1, 2020) (approving a cash fund representing approximately 35% of relevant overdraft fees alleged by plaintiff); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2015 WL 12541970 (S.D. Fla. May 22, 2015) (approving settlement representing approximately 35% of the most probable aggregate damages).

Plaintiffs believe the benefits under the Settlement are as good as, if not better, than the likely result at trial. Plaintiffs' best-case scenario would be full reimbursement of all APPSN and Futile ODT Fees. However, Defendant disputes that any of those fees were improperly assessed

and asserts that said fees were permitted under the relevant account agreements. In this context, the amount of the Settlement Fund to be distributed to Class Members is an excellent recovery. Thus, this factor also weighs in favor of Preliminary Approval. *See Parker,* 667 F.2d at 1210 fn. 6 ("there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery") (quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 455 (2d Cir. 1974).

### 6.    The Opinions of Class Counsel, Class Representatives, and Absent Class Members Favor Preliminary Approval

The opinions of counsel and the Class Representatives all favor the Settlement[2]. "The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight when evaluating a proposed settlement." *Kemp,* 2017 WL 6522323, *8 (quoting *Klein v. O'Neal, Inc.,* 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010).) Plaintiffs' Counsel, as highly experienced class action litigators, are confident in the terms of the Settlement after years of protracted and contentious litigation and have expended a significant amount of time engaged in informed negotiations. Joint Decl. ¶ 52.  Absent Class Members will have an adequate opportunity to opt out or object to the Settlement if they disagree with its terms. At this juncture, however, this factor also weighs in favor of Preliminary Approval.

### C.    Certification of the Settlement Class Is Appropriate

For settlement purposes, Plaintiffs respectfully request and Defendant does not oppose, that the Court certify the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3). *See Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 619 (1997).

---

[2]    Notice has not yet been disseminated, so the reaction of absent Class Members have not yet been assessed. Data regarding Class Member opt-outs and objections will be reported at Final Approval.

In approving provisional class certification, because the litigation is being settled rather than litigated, the Court need not consider manageability issues that litigation would present, "for the proposal is that there be no trial." *In re Deepwater Horizon,* 739 F.3d 790, 818 (5th Cir. 2014) (citing *Amchem,* 521 U.S. at 620). Certification of the proposed Settlement Class will allow notice of the proposed Settlement to issue to the Class Members to inform them of the existence and terms of the proposed Settlement; of their right to be heard on its fairness; of their right to opt-out and/or object; and of the date, time, and place of the Final Approval Hearing. *See Manual for Compl. Litig.,* §§ 21.632, 21.633.

To determine whether a proposed settlement meets the requirements for certification under Fed. R. Civ. P. 23(a) and (b)(3), district courts in the Fifth Circuit must first establish that the putative class is "adequately defined and clearly ascertainable." *Union Asset Management Holding A.G. v. Dell, Inc.,* 669 F.3d 632, 639 (5th Cir. 2012) (quoting *DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir. 1970).) Next, certification pursuant to Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the Settlement Class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the Settlement Class; and (4) the representative parties will fairly and adequately protect the interests of the Settlement Class. Certification pursuant to Rule 23(b)(3) is appropriate if (1) questions of law or fact common to the class members predominate over individual issues of law or fact; and (2) if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Multiple courts have certified nearly identical overdraft fee classes because the classes' claims involved standard form adhesion contracts and standard fee assessment practices. *See e.g., In re TD Bank, N.A. Debit Card Overdraft Fee Litig.,* 325 F.R.D. 136, 157 (D.S.C. 2018); *Gunter*

*v. United Fed. Credit Union,* No. 3:15-cv-00483-MMD-WGC, 2017 WL 4274196, at *3–4 (D. Nev. Sept. 24, 2017); *Smith v. Bank of Hawaii,* No. 16-00513-JMS-WRP, 2019 WL 2712262, at *4 (D. Haw. June 28, 2019); *Kelly et al. v. Old National Bank,* No. 82C01-1012-CT-627 (Vanderburgh Co., Ind. Mar. 20, 2013); *Faris v. Flagstar Bank,* No. 15-145287-CZ (Mich. Cir. Ct. Oct. 9, 2015); *Hernandez v. Point Loma Credit Union,* No. 37-2013-00053519-CU-BT-CTL (Cal. Super. Ct. Jul. 1, 2016).

As Plaintiffs satisfy each of the requirements of Rule 23, this Court should likewise certify the proposed Class for settlement purposes here.

### 1.    Ascertainability

The Fifth Circuit imposes an implied requirement that the plaintiff prove the existence of an ascertainable class. *See John v. National Sec. Fire and Cas. Co.,* 501 F.3d 443, 445 (5th Cir. 2007). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Mitchell v. State Farm Fire & Cas. Co.,* 327 F.R.D. 552, 560 (N.D. Miss. 2018) (quoting Manual for Complex Litigation (Fourth) § 21.222 (2018).)

Here, the Settlement Class definition is clear and definite and based on objective criteria; therefore, the Settlement Class is ascertainable. Plaintiffs define the Settlement Class as "all individuals who, while members of Defendant, have been charged an APPSN Fee or a Futile ODT Fee during the Class Period." Agreement at ¶ 27. Based on this adequately defined Class definition, Defendant's expert can easily identify class members by reference to objective criteria, including KFCU's business records. Accordingly, this threshold requirement is satisfied.

### 2.    Numerosity

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." Numerosity is readily satisfied here because the Settlement Class consists of

thousands of Keesler Federal Credit Union customers (Joint Decl. ¶ 53), and joinder of all such persons would be impracticable. *See* Fed. R. Civ. P. 23(a)(1); *see also Kelly v. Contract Callers, Inc,* No. 2:19-CV-110-KS-MTP, 2020 WL 2198981, *2 (S.D. Miss. May 6, 2020) (noting "the numerosity element is met if the potential number of plaintiffs exceeds forty") (quoting *Hackler v. Tolteca Enters., Inc.,* 2019 WL 7759523, at *3 (W.D. Tex. Sept. 9, 2019).)

   3.    **Commonality**

   The second prong of Rule 23(a) ask whether "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality" is satisfied when a plaintiff's claims "depend on a common contention" that "is capable of class wide resolution," such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011). In the Fifth Circuit, the threshold requirement "for commonality is not demanding and is met 'where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'" *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 625 (5th Cir. 1999) (quoting *Lightbourn v. County of El Paso,* 118 F.3d 421, 426 (5th Cir. 1997).)

   Here, the Settlement Class's claims are based on both common factual predicates and common legal issues. KFCU used standardized form adhesion contracts presented to customers on a take-it-or-leave it basis. Defendant assessed APPSN Fees and ODT Fees uniformly throughout the Class Period. The dispute is therefore a common one: did Defendant's contract permit it to assess fees on debit card transactions authorized on a sufficient available balance? Moreover, Plaintiffs' Complaint identifies several additional common issues of law and fact, including whether Keesler improperly charged OD Fees on APPSN Transactions; whether the conduct enumerated above violates the covenant of good faith and fair dealing; whether the conduct

enumerated above constitutes unjust enrichment; and the appropriate measure of damages. Thus, because there are multiple questions of law and fact centering on KFCU's alleged systematic practice of assessing APPSN Fees and ODT Fees that are common to the Settlement Class, alleged to have injured all Class Members in the same way, and would generate common answers central to the viability of the claims were the Action to proceed to trial, commonality is established here.

### 4.    <u>Typicality</u>

Like commonality, "the test for typicality is not demanding." *James v. City of Dallas, Tex.,* 254 F.3d 551, 571 (5th Cir. 2001), citing *Mullen,* 186 F.3d at 625. The typicality element requires that Plaintiff's claims are typical to those of the proposed Class. Fed. R. Civ. P. 23(a)(3). Importantly,

> [t]ypicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.

*James,* 254 F.3d at 571 (citations and quotations omitted). Typicality is commonly found where it is alleged that the defendant "engaged in a common scheme relative to all members of the class." *See In re Catfish Antitrust Litig.,* 826 F. Supp. 1019, 1034–35 (N.D. Miss. 1993).

In overdraft fee cases, courts have repeatedly found typicality to exist. *See e.g., Smith,* 2019 WL 2712262, at *2–3; *TD Bank,* 325 F.R.D. at 153–54; *Gunter,* 2017 WL 4274196, at *5–6; *In re Checking Account Overdraft Litig. (Comerica Bank),* 286 F.R.D. 645, 653–54 (S.D. Fla. 2012). This is because in overdraft fee cases, plaintiffs' claims derive from the same contract and same uniform, computerized fee practices and interactions with the bank. Therefore, individualized understandings "have nothing to do with" these claims because "whether it was permissible under [Defendant's] materially uniform contract with its customers, and associated common law and

statutory duties, for [Defendant] to impose overdraft fees" is an "overarching question," "the resolution of [which]…will permit resolution of Plaintiffs' and class members' [overdraft fee] claims in the aggregate." *TD Bank,* 325 F.R.D. at 152–55.

There is nothing unique about Plaintiffs' claims, as Ms. Lloyd, Ms. Miller, and each Class Member were subject to the same contract and fee practices during the Class Period. Thus, just as in other overdraft fee class actions, Plaintiffs' claims derive from a common set of documents and fee practices by KFCU and therefore, typicality is met.

### 5.    <u>Adequacy</u>

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This element examines both "'the zeal and competence of the representative's counsel" and "the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees.'" *Kelly,* 2020 WL 2198981 at *3 (citing *Jones v. Singing River Health Servs. Found.,* 865 F.3d 285, 294 (5th Cir. 2017).)

Both prongs of the adequacy requirement are satisfied here. Ms. Lloyd and Ms. Miller are adequate class representatives, as their claims stem from the same documents and practices used by KFCU as other class members, and they have actively participated in the case, including reviewing the complaint, responding to discovery, gathering responsive documents, preparing to sit for a deposition, and assisting Counsel in preparation of mediation.

As to the adequacy of Plaintiff's Counsel, Ms. Lloyd is represented by KalielGold PLLC and Weldy Law Firm, PLLC (collectively, "Class Counsel"), firms with extensive experience litigating class actions throughout the United States, including extensive experience in bank fee class action litigation. Joint Decl. ¶ 54.  As detailed in Class Counsel's firm resumes, Plaintiffs'

Counsel have actively litigated hundreds of class actions against financial institutions and have helped recover millions of dollars for consumers who were charged improper bank fees such as those at issue in this action. *See* Joint Decl., ¶ 55, ***Exhibits A***. Accordingly, adequacy is established.

### 6. <u>Predominance</u>

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623; *see also* Fed. R. Civ. P. 23(b)(3) (requiring "the questions of law or fact common to class members predominate over any questions affecting only individual members"). It "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1045 (2016). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (internal quotation omitted). "At bottom, the inquiry requires the trial court to weigh common issues against individual ones and determine which category is likely to be the focus of a trial." *Crutchfield v. Sewerage and Water Board of New Orleans,* 829 F.3d 370, 376 (5th Cir. 2016). Predominance has been found in breach of contract actions where "the claim does not require inquiry into the reasonableness of the disputed charges or payments and [does] not require individualized evidence" but rather, whether the terms of the contract permitted defendant to calculate payments in the manner that it did. *See Mitchell,* 327 F.R.D. at 563 (finding that "the issue is not whether actual cash value payments paid by State Farm were reasonable or sufficient, but rather whether State Farm was entitled to deduct labor depreciation from its insureds in the first place.")

Here, predominance is easily satisfied because liability questions common to all Class Members substantially outweigh any possible issues that are individual to each Class Member. To illustrate, each Class Member's relationship with KFCU arises from account agreements that are the same or substantially similar in all material and relevant aspects to other Class Member's agreements, and the Fees were charged based on the same set of circumstances alleged to be in breach of the Class Members' form agreements.

### 7.    <u>Superiority</u>

Lastly, resolution of thousands of claims in one action is far superior to individual lawsuits because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Indeed, "[i]t is well established that class actions are often the superior form of adjudication when the claims of individual class members are small." *Walton v. Franklin Collection Agency, Inc.,* 190 F.R.D. 404, 412 (N.D. Miss. 2000) (citing *Amchem,* 521 U.S. at 616–17.) Class Members' individual claims are about $25 per overdraft fee, giving them little incentive to litigate individually, especially against a wealthy credit union like Defendant. Concentrating the litigation in this forum promotes judicial efficiency and is the best means of resolving the lawsuit because this case has been pending in this Court for over two years, the Parties have already engaged in extensive discovery, and thus, the Court is familiar with the legal and factual issues presented. Liability can be determined in one stroke for thousands of Class Members, resulting in uniformity of decisions. Thus, superiority is readily met.

For each of these reasons, the Court should certify the Settlement Class.

### D.    **The Court Should Approve the Proposed Notice Plan Because It Is Constitutionally Sound**

Rule 23(e)(1)(B) requires that notice of the Settlement be directed "in a reasonable manner to all class members who would be bound by the proposal[.]" In comporting with the Due Process

Clause and the Federal Rules, "[t]here are no rigid rules," rather, "the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc.,* 396 F.3d at 113-14 (citations omitted). A proposed notice plan typically satisfies this standard where it provides class members information that:

> (1) describe(s) the essential terms of the proposed settlement; (2) disclose(s) any special benefits provided to the class representatives; (3) provide(s) information regarding attorneys' fees….; (4) indicate(s) the time and place of the hearing to consider approval of the settlement, and the method for objecting to (or, if permitted, for opting out of) the settlement; (5) explain(s) the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set(s) out those variations; and (6) prominently display(s) the address and phone number of class counsel and the procedure for making inquiries.

*Smith v. Tower Loan of Mississippi, Inc.,* 216 F.R.D. 338, 352 (S.D. Miss. 2003) (citing *Manual for Complex Litigation (Third)* (§ 30.212)); *see also* Fed. R. Civ. P. 23(e).

The Notice plan satisfies these content requirements and constitutes the best practicable notice under the circumstances, as it is designed to reach a high percentage of the Settlement Class, who can be identified through Defendant's reasonable efforts, by sending email and mail notice Class Members, and exceeds the requirements of constitutional due process. Fed. R. Civ. P. 23(c)(2)(B) and 23(e)(1). Thus, Plaintiffs respectfully request that the Court approve the Notice plan, including the form and content of the proposed Notices attached to the Agreement as ***Exhibit B.***

### E.    Plaintiff's Counsel Should Be Appointed Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). To determine this, the Court must consider counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation, and the types of claims asserted

in the case; knowledge of the applicable law; and resources committed to represent the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

As illustrated above, Class Counsel diligently investigated and litigated Plaintiffs' claims and the feasibility of class certification, and have and will continue to devote substantial time and resources to this litigation. Joint Decl. ¶ 56.  Class Counsel have extensive experience with similar class action litigation and have been appointed class counsel in many class actions, including several banking fee cases like the instant case. *Id.* ¶ 57.  As such, Class Counsel have in-depth knowledge of the laws applicable to the Class Members' claims and class certification. Accordingly, the Court should appoint Plaintiff's counsel to serve as Class Counsel for the proposed Settlement Class pursuant to Rule 23(g).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) grant Preliminary Approval of Class Action Settlement; (2) certify for settlement purposes only the proposed Settlement Class pursuant to Federal Rule of Civil Procedure 23; (3) appoint Plaintiffs as Class Representatives; (4) approve the Notice procedure set forth in the Agreement and approve the form and content of the Notices, attached to the Settlement Agreement as ***Exhibit B***; (5) approve the opt-out and objection procedures set forth in the Agreement; (6) stay the Action against KFCU pending Final Approval of Settlement; (7) appoint Sophia Gold of KalielGold PLLC and Christopher J. Weldy of Weldy Law Firm, PLLC as Class Counsel; and (8) schedule a Final Approval Hearing. For the Court's convenience, Plaintiffs attach to the Settlement Agreement as ***Exhibit C*** a Proposed Order Preliminarily Approving Class Action Settlement and Certifying Settlement Class that sets forth the various applicable deadlines referenced herein and outlined in the Agreement.

Respectfully submitted, on this the 1st day of February, 2022

By: */s/ Christopher J. Weldy*
    **WELDY LAW FIRM PLLC**
    Christopher J. Weldy, Esq.
    1438 N. State St.
    Jackson, MS 39202
    Telephone: (601) 624-7460
    Email: chris@weldylawfirm.com

    Jeffrey Kaliel (admitted *Pro Hac Vice*)
    Sophia Gold (admitted *Pro Hac Vice*)
    **KALIEL, PLLC**
    1875 Connecticut Avenue NW, 10th Floor
    Washington, DC 20009
    Telephone: (202) 350-4783
    Email: jkaliel@kalielpllc.com
    Email: sgold@kalielpllc.com

## CERTIFICATE OF SERVICE

I, Christopher J. Weldy, hereby certify that on this day I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

So Certified: February 1, 2022.

*/s/ Christopher J. Weldy*
Christopher J. Weldy