**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | |
|---|---|
| SHIRLEY LLOYD and VICTORIA MILLER, on behalf of themselves and all others similarly situated, | Civil Action No.: 1:19-cv-351-HSO-RHWR |
| Plaintiffs, | |
| v. | **PLAINTIFF'S UNOPPOSED MOTION FOR (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND FOR (2) ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS** |
| KEESLER FEDERAL CREDIT UNION, | |
| Defendant. | |

**<ins>PLAINTIFFS' UNOPPOSED MOTION FOR (1) FINAL APPROVAL
OF CLASS ACTION SETTLEMENT; AND FOR
(2) ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS</ins>**

## I.    __INTRODUCTION__

Plaintiffs Shirley Lloyd and Victoria Miller ("Plaintiffs") and their Counsel hereby move for (1) final approval of the proposed Settlement[1] entered into with Defendant Keesler Federal Credit Union ("KFCU" or "Defendant"), and (2) approval of payment from the Settlement Fund of attorneys' fees, costs, and service awards as set forth in the Agreement.

The proposed Settlement of this class action on behalf of current and former KFCU members who allege they were improperly charged certain overdraft fees during the Class Period represents an excellent result for the Class. The Settlement, which provides for a $3,000,000 Settlement Fund to be directly distributed to Class members without any claim forms, is an exceptional outcome of the litigation. Defendant does not oppose the Settlement, and no Settlement Class Member objected to the Settlement. The Settlement is the result of several arm's-length negotiations and provides a substantial monetary benefit to the Class without Class Members having to do anything. Accordingly, the Settlement is fair, reasonable, and adequate and warrants the Court's grant of final approval.

In conjunction with final approval, the Court should also approve Plaintiffs' requested attorneys' fees, costs, and service awards. These requested payments are fair and reasonable, as they are all in amounts routinely approved by courts in the Fifth Circuit, including federal courts in Mississippi.

Accordingly, Plaintiffs respectfully request that the Court grant the Unopposed Motion for Final Approval of Class Action Settlement, and for Attorneys' Fees, Costs, and Service Awards.

## II.    __BACKGROUND__

---

[1] The capitalized terms used herein are defined and have the same meaning as used in the Settlement Agreement (the "Agreement"), attached to Class Counsel's Declaration as ***Exhibit 1***, submitted herewith.

### A.  The Lawsuit and Mediation

On June 28, 2019, Plaintiff Shirley Lloyd filed her putative class action complaint in this Court, seeking damages, restitution, and declaratory relief arising from KFCU's alleged breach of its account contracts by improperly assessing and collecting of overdraft fees on debit card transactions that were authorized into a positive balance and settled into a negative balance ("APPSN Fees"). Dkt. No. 1; Joint Decl., ¶ 6. KFCU filed its Answer to the complaint on September 4, 2019. *Id.* ¶ 7

The Parties then commenced a contentious exchange of discovery for over a year. Joint Decl., ¶ 8.  On September 17, 2019, Plaintiff Lloyd served her first set of interrogatories and requests for production of documents on Defendant. Dkt. Nos. 12, 13; Joint Decl., ¶ 9. On November 7, 2019, Defendant served responses and objections to the same. Joint Decl., ¶ 10. On March 26, 2020, Plaintiff Lloyd served her responses to Defendant's first set of interrogatories and requests for production. Dkt. Nos. 19, 20; Joint Decl., ¶ 11. On April 1, 2020, Plaintiff Lloyd also served her Notice to Take Deposition of KFCU. Dkt. No. 21; Joint Decl., ¶ 12.

The parties met and conferred over several months until Plaintiff ultimately filed her Motion to Compel Discovery Responses on June 24, 2020. Dkt. No. 23; Joint Decl., ¶ 13. That Motion was held in abeyance on July 16, 2020, after the Court granted the Parties' Motion for Extension of Time to Complete Discovery. Dkt. No. 29; Joint Decl., ¶ 14. The Parties thereafter received additional extensions of time to complete discovery from the Court, due to numerous delays in obtaining the requisite data and documents needed to complete discovery. *See* Dkt. Nos. 32, 34, 35; Joint Decl., ¶ 15. Ultimately, Plaintiffs reviewed thousands of pages of documents during the course of this case, as well as voluminous accountholder transactional data, which was reviewed and analyzed with the help of Plaintiff's expert. *See* Joint Decl., ¶ 16.

On January 20, 2021, the Parties agreed to mediate and jointly filed a Motion to Stay All Deadlines pending the mediation, which the Court granted. Dkt. Nos. 36, 37; Joint Decl., ¶ 17. On May 17, 2021, the Parties conducted mediation before well-respected neutral Robert Gibbs, which did not result in settlement. Joint Decl., ¶ 18.

After this time, the Parties returned to engaging in the discovery process for several additional months. *Id.* ¶ 19. Plaintiff Lloyd again served a Notice to take the Deposition of KFCU on July 12, 2021, (Dkt. No. 38). Dkt. No. 40; Joint Decl., ¶ 20. KFCU also noticed and took the deposition of Plaintiff Lloyd. Joint Decl., ¶ 21. Subsequently, on October 11, 2021, the Parties jointly requested a stay of the Action in order to facilitate ongoing settlement negotiations, which the Court granted. Dkt. No. 48; Joint Decl., ¶ 22.

In the interim of the Parties' settlement discussions, on October 20, 2021, Plaintiff Victoria Miller filed her putative class action complaint in this Court, (Civil Action No. 1:12-cv-326-TBM-RPM), alleging that Defendant breached its account contracts and was unjustly enriched by improperly charging futile and unnecessary overdraft transfer fees ("Futile ODT Fees"). Joint Decl., ¶ 23. Plaintiff Miller then amended her complaint to add additional claims relating to the improper charging of overdraft fees on APPSN Transactions—the same claims alleged by Plaintiff Lloyd. *Id.* ¶ 24.

The Parties returned to mediation with Robert Gibbs on September 28, 2021. *Id.* ¶ 25. This second mediation did not result in a settlement, either. *Id.* Only in subsequent discussions following the second mediation were the Parties able to reach an agreement. *Id.* The settlement was reached after the close of fact discovery, on the eve of Plaintiff Lloyd submitting her motion for class certification. *Id.*

On November 4, 2021, Plaintiff Lloyd filed a Notice of Settlement, informing the Court that Plaintiff and KFCU had agreed to settle the litigation on a classwide basis. Dkt. No. 47; Joint Decl., ¶ 26.

On November 10, 2021, Plaintiff Lloyd filed an Unopposed Motion to Consolidate her action with that filed by Ms. Miller, which the Court granted on November 15, 2021. Dkt. No. 51; Joint Decl., ¶ 27.

Shortly thereafter, the Parties finalized and executed the Settlement Agreement. *See* Joint Decl., ***Exhibit 1***.

### B.  The Settlement Agreement

In exchange for a release of the claims against Defendant, the Settlement provides the following key terms:

- Certification of the Settlement Class defined as "all individuals who, while members of Defendant, have been charged an APPSN Fee or a Futile ODT Fee during the Class Period";

- Payment by Defendant of $3,000,000 in cash into a Settlement Fund to be held by the Settlement Administrator in an Escrow Account;

- Direct distribution of Class Members' *pro rata* share of the Net Settlement Fund to Class Members through either a direct mailed check or Account credit, without the need for Class Members to submit a claim or take any further steps;

- No reversion to the Defendant; any unclaimed funds in the Settlement Fund that are not collected will be subject to a second distribution and then will be paid on a *cy pres* basis to two non-profit charities of the Parties' choosing and approved by the Court;

- Payment of attorneys' fees from the Settlement Fund in the amount of one-third of the Settlement Fund, reimbursement of litigation costs, and payment of service awards to the Class Representatives in the amounts of $10,000 to Plaintiff Lloyd and $2,500 to Plaintiff Miller.

- Payment of costs of notice and administration from the Settlement Fund, which includes, but is not limited to the costs and expenses of Defendant's consulting

experts in compiling the Class List, the sending of Class Notice, updating the Class List, and the transmission of Settlement checks or credits.

Joint Decl., *Exhibit 1.*

### C. Preliminary Approval and Outcome of Notice

On February 9, 2022, the Court entered the Preliminary Approval Order finding that the Settlement appears on a preliminary basis to be a fair, reasonable, and adequate compromise. Dkt. No. 54. The Court directed that notice be sent to the Class Members so that they may have an opportunity to object to, or exclude themselves from, the Settlement. *See id.* The Court scheduled the final approval hearing for August 2, 2022, at 9:30 a.m., to consider final approval of the Settlement and approval of attorneys' fees, costs, and service awards, after receiving any feedback from the Class members. *Id.*

Defendant provided the Class List to the Settlement Administrator for purposes of disseminating the Court-approved Notice of the Settlement to the Class. The Notice (either via email or direct mail), informed Class Members of their rights to object to, or opt out of, the Settlement. The Settlement Administrator issued Notice to a total of 67,598 Class Members, representing 96.4% of the Class. *See* Declaration of Alex Thomas ¶ 7. After receiving Notice, as of the date of this filing, no Class Member chose to object to the Settlement, and only four class members have chosen to opt out, evidencing that Class Members believe the Settlement is fair, reasonable, and adequate. *Id.* at ¶¶ 10-11.[2]

### III.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

Courts may grant final approval of a class action settlement under Federal Rule of Civil Procedure 23(e) when the settlement is "fair, adequate, and reasonable." *Ayers v. Thompson,* 358

---

[2] Should any class member object to the Settlement, Plaintiff will file a response on or before July 18, 2022.

F.3d 356, 368 (5th Cir. 2004). The Fifth Circuit has emphasized "the strong judicial policy favoring settlements." *In re Chicken Antitrust Litig. Am. Poultry,* 669 F.2d 228, 238 (5th Cir. 1982); *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1105 (5th Cir. 1977) ("Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits."). Such is the case particularly in the context of class action lawsuits. *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977) (acknowledging "there is an overriding public interest in favor of settlement" in class action suits).

In making the ultimate determination of whether the Settlement should be given final approval, courts will consider the *Reed* factors:

> (1) the existence of fraud or collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of plaintiffs' success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.,* 703 F.2d 170, 172 (5th Cir. 1983) (citing *Parker v. Anderson,* 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Jones v. Singing River Health Services Foundation,* 865 F.3d 285, 293 (5th Cir. 2017).

This Court previously found that each of the *Reed* factors supported preliminary approval of the Settlement. *See generally* Dkt. No. 54. In reconsidering the *Reed* factors, each factor still weighs in favor of final approval of the Settlement. First, the Settlement was reached in the absence of fraud or collusion and is the product of several informed arm's-length negotiations, including two mediations conducted with the assistance of a well-respected mediator, made in good faith by competent and experienced counsel. *See* Joint Decl. ¶ 28. Second, the proposed Settlement

provides Class Members with a substantial, guaranteed, and immediate recovery that would typically take several years of continued litigation and significant expenses to achieve. As such, Plaintiffs believe the Settlement is the best vehicle for Class Members to receive the relief to which they believe they are entitled in the most prompt and efficient manner available. *Id.* ¶ 29. Third, the amount of information exchanged in both formal and informal discovery has been sufficient to inform the Parties' negotiations and to allow them to evaluate, with confidence, the strengths and deficiencies of Plaintiffs' claims, and to craft a fair settlement structure for the Class. Fourth, the strength of the claims of the Class Members compares favorably to the terms of the Settlement. Several decisions throughout the country involving claims challenging identical credit union and bank practices such as KFCU's alleged in this case demonstrate the strength of Plaintiffs' Fee claims. Nevertheless, this case faced potential obstacles at all levels that could have resulted in no recovery for the Class. Thus, the strength of Plaintiffs' novel claims weighed against the guaranteed and immediate monetary benefit also lends to a finding that the Settlement is fair, adequate, and reasonable. Fifth, the range of possible recovery also supports final approval because the Settlement affords Class Members with approximately 43% of the total actual recoverable damages in the case, which is a significant recovery given that Defendant disputes that any of the fees were improperly assessed and asserts that said fees were permitted under the relevant account agreements. *See id.* ¶ 30.

The final consideration for the Court to make at this juncture regards the opinions of absent class members. Although high class dissatisfaction can impede settlement approval, the Fifth Circuit has stated that, "[a]t the end of the day, it is not the number of Objectors but the quality of their objections that should guide the court's review." *Jones,* 865 F.3d at 300. Nevertheless, settlements have been approved notwithstanding large percentages of objectors. *See e.g., Salinas*

*v. Roadway Express, Inc.,* 802 F.2d 787, 790 (5th Cir. 1986) (34% of class members objected); *Reed,* 703 F.2d at 174 (nearly 40% of class members objected). Here, the fact that no Class Member has objected, and only four Class Members have opted out, supports that the Court should finally approve the Settlement. *See Jenkins v. Trustmark Nat'l Bank,* 300 F.R.D. 291, 305 (S.D. Miss. 2014) (finding the settlement deserving of final approval where zero class members objected).

Accordingly, as each *Reed* factor weighs favorably, the Court should grant final approval of the Settlement so that it can become effective and so the benefits can now be distributed to the Class.

## IV.  THE COURT SHOULD APPROVE CLASS COUNSEL'S REQUEST OF ATTORNEYS' FEES IN THE AMOUNT OF ONE-THIRD OF THE SETTLEMENT FUND

Plaintiffs seek an attorneys' fee award for Class Counsel of $1,000,000, representing one-third of the Settlement Fund. This request is consistent with the amount that was identified in the Notice sent to all Class Members, and to which no Class Member has objected. As demonstrated below, requested fee is reasonable and in line with awards in similar cases.

The Fifth Circuit permits district courts to award attorneys' fees based on the percentage method in common fund cases. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.,* 669 F.3d 632, 643 (5th Cir. 2012). In common fund class action cases such as this one, the percentage fee approach "is the preferred method for determining awards of attorneys' fees[.]" *Batchelder v. Kerr-McGee Corp.,* 246 F. Supp. 2d 525, 531 (N.D. Miss. 2003). This is because such percentage method "is more predictable, encourages settlement, and reduces incentives to protract litigation[.]" *Dell, Inc.,* 669 F.3d at 644 n.34.

Nevertheless, to the extent the Court wishes to perform a lodestar cross-check, this too supports the requested award. Under *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974), when applying a lodestar cross-check, the relevant factors to be considered are:

> (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson,* 488 F.2d at 717-19.

Class Counsel's requested fees are reasonable under both methodologies, as discussed herein.

## A.  The Requested Fee Is Reasonable Under the Percentage Method

Class Counsel's request for attorneys' fees in the amount of one-third of the Settlement Fund is reasonable and is a common fee award in this Circuit. Indeed, "district courts within the Fifth Circuit typically award class counsel one-third of the common fund as an attorney fee." *Hill v. Hill Brothers Construction Company, Inc.,* 2018 WL 280537, *3 (N.D. Miss. Jan. 3, 2018) (awarding attorneys' fees representing 1/3 of the $850,000 settlement fund); *see also Jenkins,* 300 F.R.D. at 307 (awarding 33% of a $4,000,000 fund as attorneys' fees); *AI's Pals Pet Care v. Woodforest National Bank, NA,* 2019 WL 387409, *4 (S.D. Tex. Jan. 30, 2019) (awarding fee representing one-third of $15 million settlement fund and noting such percentage "is an oft-awarded percentage in common fund class action settlements in this Circuit."); *In re Shell Oil Refinery,* 155 F.R.D. 552, 575 (E.D. La. 1993) (awarding attorneys' fees in amount of 1/3 of $170,000,000 settlement fund); *Heffernan Bryant v. United Furniture Industries, Inc.,* 2017 WL 639320, *5 (N.D. Miss. Feb. 16, 2017) (awarding 40% of $400,000 settlement fund in attorneys'

fees). In fact, a comprehensive study of attorney's fees in class action cases notes "a remarkable uniformity in awards between roughly 30% to 33% of the settlement amount." Theodore Eisenberg & Geoffrey P. Miller, Attorney Fees in Class Action Settlements: An Empirical Study, 1 J. of Empirical Legal Studies 27, 31, 33 (2004).

Additionally, courts approving fee requests in other bank fee settlements have approved awards similar to the award requested here. Indeed, the requested fee of 33.33% is in line with the fees awarded in similar bank fee class actions:

| Overdraft Fee Case Name | Percentage of the Fund Awarded |
|---|---|
| *In re TD Bank, Case No.* 6:15-MN-2613, Dkt. No. 233 (D.S.C. Jan. 9, 2020) | **48%** of $43 million settlement fund (and 30% of value of settlement, which also included an additional $27 million in debt relief) |
| *Lopez v. JPMorgan Chase Bank, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **44%** of value of settlement, which includes 30% of $110 million cash fund and 30% of value of practice changes |
| *Jacobs v. Huntington Bancshares Inc.* No. 11-cv-000090 (Lake County Ohio) | **40%** of value of settlement, which includes 40% of $8.975 million and 40% of $7 Million in debt forgiveness |
| *Farrell v. Bank of Am., N.A.,* 327 F.R.D. 422 (S.D. Cal. 2018), *aff'd sub nom. Farrell v. Bank of Am. Corp., N.A.,* 827 F. App'x 628 (9th Cir. 2020) | **40%** of 37.5 million common fund |
| *Wolfgeher v. Commerce Bank, N.A.,* No. 1:09-MD-02036-JLK (S.D. Fla.) (Dkt. 3574), | **38%** of $18.3 million common fund |
| *Nelson v. Rabobank, N.A.*, No. RIC 1101391 (Cal. Supr.) | **35.2%** ($750k fee includes % of practice changes) |
| *In re Checking Account Overdraft Litig.,* No. 1:09-MD-02036-JLK, 2020 WL 4586398 (S.D. Fla. Aug. 10, 2020) | **35%** of $7.5 million |
| *Morris v. Bank of America, N.A.*, No. 3:18-cv-00157-RJC-DSC (W.D.N.C.) | **33.33%** of $75 million common fund |
| *Molina v. Intrust Bank, N.A.*, No. 10-CV-3686 (Dist. Ct. Ks.) | **33%** of $2.7 million |
| *Hawkins et al v. First Tenn. Bank, N.A.* (Cir. Ct. Tenn.) | **35%** of $16.75 million |
| *Swift v BancorpSouth*, No. 1:10-cv-00090-GRJ (N.D. Fla.) | **35%** of $24 million |

| *Casto v. City National Bank, N.A.*, No. 10-C-1089 (Cir. Ct. W.Va.) | **33.33%** of $3 million |
|---|---|
| *Schulte v. Fifth Third Bank*, No. 09-cv-6655 (N.D. Ill.) | **33.33%** of $9.5 million |
| *Johnson v. Community Bank, N.A.*, No. 12-cv-01405-RDM (M.D. Pa.) | **33.33%** of $2.5 million |
| *Bodnar v. Bank of America*, No. 5:14-cv-03224-EGS (E.D. Pa.) | **33.33%** of $27 million |
| *Holt v. Community America Credit Union*, No. 4:19-CV-00629-FJG (W.D. Mo.) | **33.33%** of 3.078 million |
| *White v. Members 1st Federal Credit Union*, Case No. 1:19-cv-00556-JEJ (W.D. Pa.) | **33.33%** of $910,000 |
| *Figueroa v. Capital One*, Case No. 3:18-cv-00692-JM-BGS (S.D. Cal.) | **33.33%** of $13 million |
| *Liggio v. Apple Federal Credit Union*, No. 1:18-cv-01059-LO-MSN (E.D. Va.) (J. O'Grady) | **33.33%** of $2.7 million |
| *Lambert v. Navy Federal Credit Union*, Case No. 1:19-cv-00103-LO-MSN, Dkt. No. 61 (E.D. Va. Apr. 8, 2021) | **33.33%** of $16 million |

As demonstrated above, the requested fee award in this case is on par with the fee awards approved in other bank fee class action cases.

### B.  The Requested Fee Is Still Reasonable Even With a Lodestar Cross-Check

Application of the lodestar cross-check method further demonstrates that Class Counsel's fee request is reasonable. "Under the lodestar method, the court first multiplies the reasonable number of hours spent working on the case by the reasonable hourly rate for the attorney to determine the lodestar figure." *Jones v. Singing River Health Sys.,* 2016 WL 3248449, at *3 (S.D. Miss. June 10, 2016) (citing *Black v. SettlePou, P.C.,* 732 F.3d 492, 502 (5th Cir. 2013).) When, as here, it is necessary for local counsel to engage out-of-state counsel who specialize in the subject matter of the litigation, the out-of-state counsel's "home" rates should be considered the starting point for calculating the lodestar amount. *McClain v. Lufkin Indus., Inc.,* 649 F.3d 374, 382 (5th Cir. 2011). After performing this calculation, the Court "may enhance or decrease the amount of

attorney's fees based on the relative weights of the twelve" *Johnson* factors. *Black,* 732 F.3d at 502.

In total, class counsel has spent approximately 712.9 hours performing necessary work on behalf of the Class, from investigating and gathering evidence in support of the claims resolved by the Settlement; drafting the Complaint; drafting and responding to written discovery requests; producing and reviewing thousands of pages of documents; engaging an expert to analyze complex transactional data; engaging in several meet and confer conferences; researching, drafting, and filing a motion to compel discovery; taking and defending several depositions; moving to consolidate the actions; preparing for mediation by researching and drafting a comprehensive mediation statement and by undergoing an extensive review of the potential damages; attending mediation twice; negotiating and drafting the Agreement with Defendant's counsel that provides substantial benefits to the Class; moving for and obtaining preliminary approval; overseeing the Settlement Administrator's efforts to provide notice to the Class; and preparing the Motion for Final Approval. *See* Joint Decl., ¶32.

Prior to filing, Class Counsel engaged in an extensive, independent investigation regarding the viability of Plaintiffs' claims, which resulted in the successful Settlement reached by the Parties. Class Counsel spent many hours investigating the claims of several potential plaintiffs against KFCU, including interviewing a number of KFCU customers to gather information about KFCU's conduct and its impact upon consumers, which was essential to Class Counsel's ability to understand the nature of Defendant's conduct, the language of the account agreement and other documents at issue, and potential remedies. Through its independent investigation, Class Counsel expended significant resources researching and developing the legal claims at issue. Indeed, Class Counsel is familiar with the instant claims through their extensive history of litigating and

resolving other banking fee claims with similar factual and legal issues to the case at bar. Class Counsel has experience in understanding the damages at issue, what information is critical in determining class membership, and what data is necessary to calculate each Class Member's respective damages. These issues were heavily contested all throughout the Parties' written discovery process and ongoing meet and confer efforts. Class Counsel, along with its fee expert, spent a significant amount of time analyzing data regarding KFCU's fee revenue related to the assessment of APPSN Fees and Futile ODT Fees at issue. Defendant similarly retained its own expert who conducted a review and analyzed data accordingly. This data and analysis evaluating potential damages at issue was used in preparation for the Parties' scheduled meditations and to further drive the viability of resolution. *See* Joint Decl., ¶33.

Class Counsel attended mediation twice, fully equipped with the facts and law to support the merits of Class Members' claims and negotiated the proposed Settlement while zealously advancing the position of Plaintiffs and the Class Members. At all times, Class Counsel was fully prepared to continue litigation rather than to accept a settlement that was not in the best interests of Plaintiffs and the Settlement Class. Although the case did not settle at the conclusion of the first mediation session, the Parties continued to actively participate in settlement discussions and only reached a resolution after the close of fact discovery and on the eve of class certification. Joint Decl., ¶ 34.

In sum, Class Counsel spent significant time communicating with Plaintiffs, investigating facts, researching the law, preparing the Complaint, engaging in discovery and motion practice, working with an expert witness, and reviewing important documents and data. More work will be required of Counsel after final approval is granted, including working with the Settlement Administrator to ensure that all payments are made, and if residual funds exist, overseeing a second

distribution, and otherwise obtaining approval to issue the residual funds to *cy pres* recipients. Class Counsel's 712.9 hours worked multiplied by Class Counsel's reasonable rates amount to a lodestar of $358,254.20. Joint Decl., ¶ 35. Thus, the requested fee award represents a multiplier of only 2.79. Joint Decl., ¶ 36.

Class Counsel's hourly rates as set forth in the Joint Declaration are reasonable. Here, Class members benefitted from employing out-of-state counsel who specialized in similar bank fee class actions. As Mr. Weldy attests, due in part to the fact that Mississippi does not allow class actions to proceed in its state courts, few plaintiffs'-side practitioners in Mississippi have significant class action experience. Joint Decl., ¶ 45. Prior to participating in this case, Mr. Weldy did not have significant class action experience. *Id.* In employing out-of-state counsel, Class Members benefitted from the expertise of KalielGold PLLC—a firm which has extensive experience in consumer class action litigation, and in litigation involving the financial services industry in particular. *Id.* There are few, if any, firms in the nation with as much expertise as Class Counsel in these particular types of bank fee cases. KalielGold PLLC has litigated dozens of similar cases across the country. *Id.* ¶ 4. Due to out-of-state counsel's expertise in similar class action litigation against financial institutions, it is appropriate here for the Court to use Counsel's "home" rate. *See McClain v. Lufkin Indus., Inc.,* 649 F.3d 374, 382 (5th Cir. 2011).

The rates of the attorneys at KalielGold PLLC are based on the Adjusted Laffey Matrix, which measure prevailing market rates based on seniority in the D.C.-area and has been cited by numerous courts as an appropriate starting point for fees, especially in class actions of a national scope as this case. *See Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 592 F.3d 219 (4th Cir. 2009); *Salazar ex rel. Salazar v. D.C.*, 809 F.3d 58, 64 (D.C. Cir. 2015); *In re Neustar, Inc. Sec. Litig.*, No. 1:14cv885 (JCC/TRJ), 2015 WL 8484438, at *10 n.6 (E.D. Va. Dec. 8, 2015).

Even if, however, the Court declines to use the Adjusted Laffey Matrix, similar rates are frequently approved by courts in this district. *See e.g., Jackson Women's Health Org. v. Currier,* 2019 WL 418550, at *6-7 (S.D. Miss. Feb. 1, 2019) (awarding a rate of $550 to experienced civil rights attorney); *McWilliams v. Advanced Recovery Systems, Inc.,* 2017 WL 2625118, at *2 (S.D. Miss. June 16, 2017) (acknowledging affidavit submitted by defense attorney and former president of the Mississippi Bar attesting to the fact that reasonable rates for Mississippi lawyers in complex litigation range from $500 to $550 per hour); *U.S. ex rel. Rigsby v. State Farm Fire & Cas. Co.,* No. 1:06CV433-HSO-RHW, 2014 WL 691500, at *14 (S.D. Miss. Feb. 21, 2014) ("Customary and reasonable rates currently charged by litigation partners in Mississippi firms and/or regional firms with offices in Mississippi are in the $400–$500 range").

Here, the lead attorney working on this case—Ms. Gold—bills at a rate of $468 per hour, which is well in line with the rates awarded in this district for complex litigation. Joint Decl. ¶ 37. While Mr. Kaliel's billing rate is slightly higher at $764 per hour, the firm's blended rate of $535 per hour is still comfortably within the range of the reasonable hourly rate awarded by courts in this district in complex cases. *See id.* ¶ 40.

### C. The Relevant *Johnson* Factors Further Support Class Counsel's Fee Request

As demonstrated above, there is a strong presumption that Plaintiffs' fee request is reasonable. However, "[w]hile all of the *Johnson* factors are not necessarily relevant under the percentage fee approach, … those factors are the most proper standard with which to weigh the reasonableness of a fee award." *Batchelder,* 246 F. Supp. 2d at 531. Weighing the relevant *Johnson*

factors[3] demonstrates that Class Counsel's request of an award amounting to one-third of the Settlement Fund is a reasonable percentage of the amount of the Settlement.

The second factor considers the novelty and difficulty of the questions presented in the litigation. As addressed at the preliminary approval stage, although Class Counsel believes that Plaintiffs' claims have substantial merit, the fact remains that, to Class Counsel's knowledge, no similar APPSN Fee claim has proceeded to trial. This means that there is no model for Plaintiffs' case and therefore, unforeseen pitfalls could easily derail the Class's claims should they proceed through the rigors of litigation. *See Johnson,* 488 F.2d at 718 ("Cases of first impression generally require more time and effort on the attorney's part.").

Discussion regarding the third and fourth factors go hand-in-hand, as they consider the skill required to perform the legal service properly and ask if the litigation precluded the attorneys from accepting other cases. As addressed above and as illustrated by Class Counsel's declaration, the attorneys have expended significant time and resources in litigating this complex matter, including several rounds of arm's-length negotiations and multiple mediations. Certainly, time dedicated to this case took away from the time to be dedicated for others. Additionally, Class Counsel has a national reputation for their acquired skill in complex class action litigation, and particularly, in the context of banking litigation.

The sixth factor acknowledges that Class Counsel agreed to take this complex class action case on a contingency fee basis. Joint Decl. ¶ 31. As a result, Class Counsel assumed a significant

---

[3] The Court "must be careful, however, not to double count a *Johnson* factor already considered in calculating the lodestar when it determines the necessary adjustments." *Shipes v. Trinity Indus.,* 987 F.2d 311, 320 (5th Cir. 1993). Here, Plaintiffs have already addressed the time and labor required for the litigation (first factor), the customary fee (fifth factor), the experience, reputation, and ability of the attorneys (ninth factor), and the awards in similar cases (twelfth factor). *See, supra,* pp. 7-9. Thus, Plaintiffs will only address the remaining factors that are relevant to this case.

risk of nonpayment, and incurred significant out-of-pocket costs without any guarantee of repayment. This commitment to prosecute the action notwithstanding the financial risk presented to Plaintiffs' counsel warrants enhanced compensation. *See Heffernan,* 2017 WL 639320 at *5.

The seventh factor examines the time limitations imposed by the client. "Because this was a class action suit, this factor has no application." *Batchelder,* 246 F. Supp. 2d at 532 (citing *In re Catfish Antitrust Litig.,* 939 F. Supp. 493, 502 (N.D. Miss. 1996).)

The eighth factor, the amount involved and the results obtained, "is the most critical factor in determining the reasonableness of the fee award," and also supports Plaintiffs' fee request. *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir. 1998). As addressed, $3,000,000 Settlement Fund is an excellent achievement and provides Class Members with a guaranteed benefit representing approximately 43% of their damages. Joint Decl. ¶ 30. Importantly, Class Members will automatically receive this benefit without having to submit a claim, offer any evidentiary proof, or opt-in. This factor supports the requested fee and is further justified by the fact that no class member has objected to the settlement. *See In re Shell Oil Refinery,* 155 F.R.D. at 572 ("the infinitesimally small number of objections" demonstrates that "the class members themselves are satisfied.").

After applying the *Johnson* factors, a multiplier of 2.79 is warranted and should be applied to Class Counsel's lodestar. This is an appropriate fee calculation because the cross-check incorporates a commonly acceptable range of lodestar multipliers in this Circuit. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,* 851 F. Supp. 2d 1040, 1088 n. 52 (S.D. Tex. 2012) ("In our informal review of opinions evaluating a lodestar cross-check, the multipliers ranged from about 1.0 to over 5.0, with a substantial number of multipliers in the 3.0 to 4.0 range"); *see e.g., In re Shell Oil Refinery,* 155 F.R.D. at 574 (applying a 3.2508 multiplier

in a common fund mass tort case); *Turner v. Murphy Oil USA, Inc.,* 472 F. Supp. 2d 830, (E.D. La. Jan. 30, 2007) (applying a lodestar multiplier range of 2.5 to 3.5 in consolidated class actions); *Garza v. Sporting Goods Properties, Inc.,* 1996 WL 56247, at *33 (W.D. Tex. Feb. 6, 1996) (finding multipliers of 3.25 and 4 were appropriate in products liability class action).

In sum, the request for the Court to award one-third of the Settlement Fund here is reasonable and in line of the amount routinely awarded, and is further deemed reasonable when cross-checked by the *Johnson* factors.

## V.   THE COURT SHOULD GRANT THE REIMBURSEMENT OF PLAINTIFFS' LITIGATION COSTS

Lastly, Class Counsel respectfully requests that, in addition to attorneys' fees, the Court reimburse approximately $18,528.13 in litigation costs. Here, Class Counsel advanced these costs and expenses related to filing fees, expert data analysis, mediation, depositions, and court fees. Joint Decl. ¶ 43. These costs (the majority of which are the result of expert fees) were reasonably expended in the duration of the case. Indeed, Class Counsel had an incentive to only incur expenses that were reasonable and necessary for the prosecution of this case because Class Counsel was not guaranteed to recover these expenses because their repayment was contingent on the successful resolution of this case. *See Heffernan Bryant,* 2017 WL 639320 at *6 (finding "costs related to travel, expert witnesses, investigation, discovery, service of process, and other administrative needs" to be "reasonable.") Thus, the requested reimbursement for costs is inherently reasonable given the complexity of the litigation.

## VI.  THE COURT SHOULD APPROVE THE CLASS REPRESENTATIVE SERVICE AWARDS

Additionally, the Court should also approve service awards in the amounts of $10,000 for Plaintiff Shirley Lloyd and $2,500 for Plaintiff Victoria Miller. "Service awards compensate

named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Kemp v. Tower Loan of Mississippi, LLC,* 2017 WL 6522323, at *8 (S.D. Miss. Dec. 20, 2017) (internal quotation and citations omitted); *see also Cook v. Howard,* 2013 WL 943664, at *3 n.4 (S.D. Miss. Mar. 11, 2013) ("It is not unusual for a court to make an 'incentive award' to named plaintiffs because of their sacrifices in pursuit of litigation on behalf of the class.") (quoting *In re Catfish,* 939 F. Supp. at 503-04.) Courts examine the following *Humphrey* factors in determining whether to approve a requested service award:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Humphrey v. United Way of Tex. Gulf Coast,* 802 F. Supp. 2d 847, 869 (S.D. Tex. 2011).

Courts in the Fifth Circuit have routinely approved class representative service awards in amounts similar to, and higher than, those requested by Plaintiffs here. *See e.g., Mitchell v. State Farm Fire and Casualty Company,* 2021 WL 736895, *8 (N.D. Miss. Feb. 25, 2021) (awarding representative plaintiff a $15,000 service award); *Hill,* 2018 WL 280537, at *4 (awarding $2,500 to each 15 class representatives); *In re Catfish,* 939 F. Supp. at 504 ("approving incentive awards of $10,000 to each of the four named plaintiffs"); *Jenkins,* 300 F.R.D. at 306 (approving $5,000 award); *AI's Pals Pet Care,* 2019 WL 387409 at *5 (awarding class representatives $10,000 each).

Here, Plaintiffs' participation was essential to the success of this case. Joint Decl. ¶ 46. They put themselves forward to protect Class members by being the Class Representatives in this suit. They also reviewed and collected their banking records, worked with Class Counsel on the Complaint, and consulted with Class Counsel regarding the Settlement to ensure a favorable result for the Class. *Id.* With respect to Plaintiff Lloyd, an enhanced award is appropriate given that she

both responded to written discovery requests and prepared for and sat for a deposition. *Id.* Given the significant time invested as well as the public service provided, the service awards are justified and reasonable.

## VII.   <u>**CONCLUSION**</u>

In the light of the above, Plaintiffs respectfully requests that the Court (1) grant final approval to the Settlement, and (2) approve the requested payments from the Settlement Fund of attorneys' fees, costs, and service awards.

Dated: June 16, 2022                          Respectfully submitted,

By: */s/ Christopher J. Weldy*
**WELDY LAW FIRM PLLC**
Christopher J. Weldy, Esq.
chris@weldylawfirm.com
1438 N State St.
Jackson, MS 39202
Telephone: (601) 624-7460

**KALIELGOLD PLLC**
Sophia G. Gold
sgold@kalielgold.com
950 Gilman Street, Suite 200
Berkeley, CA 94710
Telephone: (202) 350-4783

**KALIELGOLD PLLC**
Jeffrey D. Kaliel
jkaliel@kalielpllc.com
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783

*Attorneys for Plaintiffs and the Putative Classes*